UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:25-CR-034-REW-HAI-1 |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| JESUS CHAVEZ, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Jesus Chavez moves to suppress all statements made during an interrogation occurring on or about October 25, 2024, and all derivative evidence gathered from the search of his phone, which was conducted pursuant to a search warrant issued after the interrogation. *See* DE 26 (Motion). Specifically, Chavez, who faces a host of sexual exploitation charges under 18 U.S.C. § 2251, argues that he invoked his Fifth Amendment right to counsel, which should have caused immediate cessation of the interrogation. *See id.* at 5. The United States responded in opposition, *see* DE 29, and Chavez replied, *see* DE 30. The parties agree that the record decides the case, with no hearing needed. For the reasons set forth below, the Court **GRANTS in part** and **DENIES in part** Chavez's motion to suppress, DE 26.

Chavez invoked his right to counsel, and all law enforcement questioning should have ceased after that act. The subsequent police-initiated interrogation therefore constitutes a violation of Chavez's Fifth Amendment rights. Under the exclusionary rule, Chavez's post-invocation inculpatory statements are inadmissible in the Government's case-in-chief. The independent source rule, however, permits the Government to freely use the evidence discovered on Chavez's

phone, as the application for the search warrant for Chavez's phone contained probable cause even without consideration of the single line discussing Chavez's statements under interrogation.

I.  **Background**

In October of 2024, the Pulaski County Sheriff's Office launched an investigation into Defendant Chavez based on a report that Chavez and a minor had engaged in a sexual relationship. *See* DE 26 at 1; DE 29 at 1-2. As part of the investigation, police interviewed the minor, reviewed messages sent through social media application Instagram between the minor and an account determined to belong to Chavez, and observed a controlled call between the minor and Chavez. *See* DE 29 at 2. Police then obtained a state arrest warrant, naming Chavez, for rape in the second and third degrees and sodomy in the second and third degrees. *See id.* On October 25, 2024, police arrested Chavez and brought him to the police station. *See id.*

At this point, Chavez was in custody and subject to law enforcement questioning; neither party disputes custodial interrogation status. The parties agree that police administered Chavez his *Miranda* rights. Chavez confirmed he understood and agreed to speak with Officer Ryan Jones of the Pulaski County Sheriff's Office. *See id.*; DE 26 at 1-2. That part of the interaction is not before the Court or in the record, and Chavez does not contest the legality of steps taken to the point the interrogation started. The Court has reviewed Officer Jones's interrogation of Chavez, which was captured on video and conventionally filed at DE 28.

Relevant to the instant motion, Officer Jones began the interrogation by asking Chavez if he knew why he was in police custody and then referencing the charges on the arrest warrant. *See* DE 28 at 0:20-1:00. Explaining that this was Chavez's opportunity to tell his side of the story, Jones asked Chavez, "Do you think you can be truthful with me on that and talk to me?" *See id.* at 1:20-1:32. Chavez paused for several seconds and then responded, "I feel like I should get a

2

lawyer." *See id.* at 1:40. Critically, Officer Jones then immediately stated, "okay, so you are wanting to talk to a lawyer?" *See id.* at 1:43. Chavez unmistakably nodded his head affirmatively in response. *See id.*

Officer Jones then quickly queried, "Are you wanting us to attempt to contact a lawyer right now?" Chavez responded, given the time (almost midnight), "are we able to?" *See id.* at 1:47. Officer Jones stated that they could "try," and then he asked Chavez if he had a lawyer on retainer or one specifically in mind that he would like to contact. *See id.* at 1:50. Chavez responded that he did not. *See id.* at 1:55. Officer Jones then said, "I can give you a chance to attempt to contact a lawyer. If any are answering at midnight, I don't know." *See id.* at 2:06-2:13. Jones then performed an internet search for local attorneys, displayed the search results to Chavez, and asked Chavez if he wanted to contact any of them. *See id.* at 2:16-2:40. Chavez responded, "they probably wouldn't answer at this time, would they?" *See id.* at 2:44. Officer Jones responded, "It is completely up to you. If you feel like you need an attorney, I want to afford you the opportunity to attempt to contact one." *See id.* at 2:46-2:54. Jones proceeded to explain the low likelihood of a law office answering at nearly midnight but stated that it was ultimately Chavez's choice on whether he wanted legal counsel or to just give his side of the story to Jones. *See id.* at 2:56-3:46. Chavez then agreed to talk to Officer Jones. *See id.* at 3:57. Chavez made inculpatory statements in the interrogation that ensued.

Police later obtained a warrant to seize and search Chavez's phone. *See* DE 29 at 4. The affidavit included in the search warrant application discussed the report from the minor's family member regarding the alleged relationship, the interview with the minor and the minor's father, the Instagram messages, the controlled call between the minor and Chavez, and (in one, final line) the interrogation of Chavez following his arrest. *See* DE 29-1 (Affidavit for Search Warrant) at 2.

3

In executing the search warrant, the police located videos underlying the Indictment, *see* DE 1, which charges Chavez with five counts of violating 18 U.S.C. § 2251(a), using a minor to engage in sexually explicit conduct for the purpose of producing visual images of said conduct. Chavez now moves to suppress all statements he made in the interrogation, claiming violation of his Fifth Amendment right to counsel. He also targets all evidence derived from the search of his phone as fruit of the poisonous tree. *See* DE 26.

## II. Legal Standard

The Fifth Amendment to the United States Constitution provides that "no person ... shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. While the Fifth Amendment does not expressly enshrine a right to counsel, the Supreme Court has long interpreted the provision as impliedly guaranteeing a right to have counsel present when subject to custodial interrogation. *See Miranda v. Arizona*, 86 S. Ct. 1602, 1625–26 (1966); *England v. Hart*, 970 F.3d 698, 706 (6th Cir. 2020). This *Miranda* safeguard aims to address the concern that custodial interrogation creates "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *See Miranda*, 86 S. Ct. at 1624. Courts enforce the Fifth Amendment right to counsel through the threat of suppression. *See Davis v. United States*, 114 S. Ct. 2350, 2356 (1994). If a suspect has invoked his right to counsel, courts may admit responses to further questioning only by finding that the suspect (1) initiated later discussions with police and (2) knowingly and intelligently waived the right invoked. *See Smith v. Illinois*, 105 S. Ct. 490, 494 (1984).

Once custodial interrogation has begun, the individual has been given *Miranda* warnings, and the individual has effectuated a valid waiver, law enforcement officers are free to question the individual without counsel unless and until the individual invokes the right to counsel. *See*

*Edwards v. Arizona*, 101 S. Ct. 1880, 1885 (1981). In *Edwards*, the Supreme Court laid the groundwork for the invocation standard, explaining that the protection is triggered when "an accused…express[es] his desire to deal with police only through counsel[.]" *See id.* The Supreme Court illuminated the *Edwards* invocation standard in *Davis*, holding that invocation requires an unambiguous request for counsel. *See Davis*, 114 S. Ct. at 2355. The suspect must articulate his desire with sufficient clarity to allow a reasonable police officer in the circumstances to understand the statement to be a request for an attorney. *See id.* ("Although a suspect need not "speak with the discrimination of an Oxford don," he must "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.") (internal citations omitted). If the suspect makes a reference to an attorney that is ambiguous or equivocal such that a reasonable officer would understand "only that the suspect *might* be invoking the right to counsel," the questioning may proceed. *See id.* (emphasis in original). The Sixth Circuit has noted the "high bar" set by *Davis* to trigger the protections outlined in *Edwards*. *See United States v. Potter*, 927 F.3d 446, 450-51 (6th Cir. 2019).

An individual that properly invokes the right to counsel "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *See Edwards*, 101 S. Ct. at 1885. Once a proper invocation has been made, an officer may not solicit responses or statements from the suspect to "cast doubt on the adequacy of the initial request" and thereby engineer ambiguity. *See Smith*, 105 S. Ct. at 494. The Court limned this analysis, including the narrow temporal inquiry, in a recent decision. *See United States v. Walters*, No.

5

6:24-CR-19-REW-HAI, 2024 WL 4751284, at *3-4 (E.D. Ky. Nov. 12, 2024) (referencing focus on the statement itself, not subsequent remarks or interactions "casting retrospective" doubt).

In the event of an ambiguous or equivocal statement, the interrogating officer can proceed in one of two ways: forge ahead with questioning or seek to clarify whether the suspect actually wants an attorney. The latter, though explicitly not required to afford an individual his Fifth Amendment right, is often a best police practice. *See Davis*, 114 S. Ct. at 2356. Clarification, as the Court explained, "help[s] protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel." *Id.*

The Government stridently opposes invocation on this record but also points the Court to the independent source rule as an alternative ground for permitting the fruits of the later phone search. The independent source rule, an exception to the exclusionary rule, permits admission of evidence that has been discovered "by means wholly independent of any constitutional violation." *See Nix v. Williams*, 104 S. Ct. 2501, 2508 (1984). This rule promotes equally the societal interest in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime by "putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred." *See id.* at 2509.

At the heart of an independent source decision is the underlying question: "whether, granting establishment of the primary illegality, [the evidence has] been come at by the exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *See United States v. Jenkins*, 396 F.3d 751, 757 (6th Cir. 2005) (quoting *Wong Sun v. United States*, 83 S. Ct. 407 (1963)). In the search warrant context, the relevant inquiry is whether the search warrant would have been granted by the issuing judge even without

consideration of the tainted information. *See id.* at 758-59. If, after removing the tainted portion, the application for a warrant contains probable cause, the independent source doctrine applies, the warrant is lawful, and the evidence discovered pursuant to such warrant is admissible. *See id.* The defense here argues only over the invocation debate; Chavez's reply did not grapple with the independent source rule or contest residual probable cause.

### III. Analysis

#### a. Invocation

Chavez argues that he unequivocally and unambiguously invoked his right to counsel when he stated, "I feel like I should get a lawyer." *See* DE 26 at 5. In his view, this statement "can only be reasonably, unequivocally, and unambiguously construed to be an expression of his desire for the assistance of an attorney." *See id.* at 6. His argument also sounds in later police coercion, suggesting that Officer Jones pressured him into speaking then and there by noting the low probability of being able to reach an attorney at that time of night and failing to offer alternatives, such as waiting until the morning to conduct the interrogation. *See id.* at 5-6. The Government counters that Chavez's statement does not satisfy the lofty unambiguous standard. *See* DE 29 at 7. The Government emphasizes Chavez's use of, "I feel like," in arguing equivocation and prevarication in the statement. *See id.* The Government also notes that Officer Jones, in contrast to the coercive picture painted by the defense, clarified Chavez's request and "took great care to ensure if Chavez wanted an attorney, he would make every effort to allow him to get one." *See id.*

Chavez's statement, on its own, undoubtedly presents a close call on invocation. Controlling caselaw on the verbiage necessary to invoke the Fifth Amendment right to counsel is highly fact- and circumstance-specific, and neither party cites analogous caselaw that specifically

7

resolves the issue. The Sixth Circuit in *Potter*, faced with a similar dilemma, provided a collection of Circuit cases analyzing invocation adequacy, helpfully including statements resulting in both outcomes:

> *Davis*'s clear command has doomed several *Edwards* claims in our circuit. Take, for example, the statement "I think I should talk to a lawyer, what do you think?" Was that an unambiguous request for counsel? No. *United States v. Delaney*, 443 F. App'x 122, 130 (6th Cir. 2011). How about " '[i]t would be nice' to have an attorney"? Insufficient. *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994); *cf. Henness v. Bagley*, 644 F.3d 308, 319–20 (6th Cir. 2011). Or "I really should have a lawyer, huh?" Equivocal. *United States v. Mays*, 683 F. App'x 427, 433 (6th Cir. 2017); *see also United States v. Amawi*, 695 F.3d 457, 484–85 (6th Cir. 2012). For what it's worth, other circuits have likewise rejected *Edwards* claims based on similar statements. *E.g.*, *United States v. Oquendo-Rivas*, 750 F.3d 12, 19 (1st Cir. 2014); *United States v. Havlik*, 710 F.3d 818, 821–22 (8th Cir. 2013); *Soffar*, 300 F.3d at 594–95; *United States v. Zamora*, 222 F.3d 756, 765–66 (10th Cir. 2000); *Burket v. Angelone*, 208 F.3d 172, 198 (4th Cir. 2000); *Diaz v. Senkowski*, 76 F.3d 61, 63–65 (2d Cir. 1996).
>
> We have, by contrast, found requests for an attorney unambiguous (triggering Edwards) when a suspect told the police that he wanted to be left alone "until I can see my attorney," *Tolliver v. Sheets*, 594 F.3d 900, 923 (6th Cir. 2010), or directed the police to "call his attorney's phone number," *Moore v. Berghuis*, 700 F.3d 882, 887 (6th Cir. 2012). We have even reached that result when a person said "maybe I should talk to an attorney by the name of William Evans." *Abela v. Martin*, 380 F.3d 915, 926–27 (6th Cir. 2004), *abrogated on other grounds by Guilmette v. Howes*, 624 F.3d 286 (6th Cir. 2010). Despite the "maybe" in this statement, we said that the surrounding circumstances—the suspect referred to a specific attorney, the suspect handed the officer the attorney's business card, and the officer said that he would call the attorney—turned what would otherwise be an equivocal request into an unambiguous one. *Id.*; *see Scott*, 693 F.3d at 719–20.

*Potter*, 927 F.3d at 451.

What is meant to be a bright-line rule is, in practice, not quite so lucid. Parsing the cases creates something of a maze between linguistic data points indicating what does and does not meet the mark. *See, e.g.,, Walters*, 2024 WL 4751284, at *5-6 (marshalling cases); *United States v. Zakhari*, 85 F.4th 367, 375-77 (6th Cir. 2023) (marshalling cases). The objective *Davis* test is plain enough—Is the statement one that "can reasonably be construed to be an expression of a desire for the assistance of an attorney[?]"

Considering the spectrum of cases listed above, Chavez's initial statement is likely an inadequate attempt to invoke the right to counsel. He said, "I feel like I should get a lawyer." Comments with any degree of lexical conditionality, regarding invocation of the right to counsel, typically fail. *See Mays*, 683 F. App'x at 432-33 (flagging ambiguity exemplars such as *Davis*'s "Maybe I should talk to a lawyer," and *Delaney*'s "I think I should talk to a lawyer," in finding defendant Mays's "I really should have a lawyer, huh?" inadequate). Chavez saying he feels "like" he "should" get a lawyer is not, at least under the binding cases, the same as him saying, in the moment, that he clearly requests or desires counsel before proceeding. It is close, though, given cases like *Kyger v. Carlton*, 146 F.3d 374, 379 (6th Cir. 1998), which found unambiguous "I'd just as soon have an attorney." Chavez's statement of feeling surely, in one view, signals his instant desire, the *Davis* trigger, but couching it with the preposition "like" and auxiliary verb "should" does introduce a doubt between expression of the merely advisable and assertion of the plainly requested. That's enough to inject ambiguity, under the rigid case formulations.

That is not the end, though. Dispositive of the invocation issue, and glossed over by the parties, is what ensued immediately after Chavez uttered the initial statement at issue.

After Chavez stated, "I feel like I should get a lawyer," Officer Jones interpreted and clarified Chavez's statement, asking, "Okay, so you are wanting to talk to a lawyer?" *See* DE 28 at 1:43. Chavez then clearly nodded his head in affirmation. *See id.* Chavez's nods, taken with Chavez's statement and Jones's clarification, effectively, objectively, and unmistakably communicated, "yes, I want to talk to a lawyer." This communication exchange can only be reasonably interpreted as an expression of the desire to have the assistance of counsel. *See United States v. El-Amin*, No. 98-1589, 2000 WL 32038, at *4 (6th Cir. Jan. 6, 2000) (noting that "I want to talk to a lawyer" was an invocation of his right to counsel); *United States v. Perkins*, 608 F.2d

9

1064, 1066 (5th Cir. 1979) (holding "I think I want to talk to a lawyer" as an invocation of the right to counsel); *Matthews v. McKee*, No. 06-CV-15253, 2009 WL 160291, at *9 (E.D. Mich. Jan. 22, 2009) (finding "I want to talk to a lawyer" an explicit invocation); *Marsack v. Howes*, 400 F. Supp. 2d 483, 496 (E.D. Mich. 2004) (recognizing "I want to talk to an attorney" is an invocation of the Fifth Amendment right to counsel); *see also United States v. Groce*, No. 2:15-cr-511-KKD-GMB, 2016 WL 3892487, at *4 (M.D. Ala. July 1, 2016) (finding defendant's affirmative nod in response to being asked if he wanted to talk to a lawyer supportive of an unambiguous request for counsel). Chavez's request, albeit through a non-verbal gesture, was unambiguous and unequivocal, thus satisfying the *Davis* standard and triggering *Edwards* protection.

In some ways, the exchange echoes foundations from *Smith v. Illinois* and *United States v. Zakhari*. In *Smith*, officers told the defendant of his right to consult with and have a lawyer present at interrogation and queried his comprehension. He responded, "Uh yeah. I'd like to do that." The Court found that responsive answer an unambiguous invocation. *See Smith*, 105 S. Ct. at 491, 494. Similarly, Jones's question provided the predicate—"Ok, so you are wanting to talk to a lawyer?" Chavez's non-verbal but plainly affirmative gesture closes the loop. Likewise, in *Zakhari*, authorities confirmed the defendant's rights awareness, and he expressly asked to call his father. The officer blocked that, when learning the father was not a lawyer. The defendant then identified his sister as a lawyer, and the interrogator asked, "Do you wanna call your sister?" The defendant replied, "Yeah." *See Zakhari*, 85 F.4th at 373-74. The Court treated the exchange as one where the defendant "plainly sought counsel" and thus a valid invocation. Here, Jones put a like binary question to Chavez, and he nodded to confirm that, indeed, he was "wanting to talk to a lawyer." The interrogation should have ended, and the ensuing Q & A is out of bounds.

Further, supportive of this conclusion is Officer Jones's own subjective response. Upon seeing Chavez's gesture, he then asked whether Chavez wanted to attempt to contact a lawyer at that moment. *See* DE 28 at 1:45. This tends to confirm that, just as his initial reaction to Chavez's first attempt to invoke, Officer Jones understood Chavez's communication to be a request for counsel. The question is objective, but Jones's instant take is confirmatory and aligns with the *Davis* standard, namely, that the desire be articulated with sufficient clarity to allow a reasonable officer under the circumstances to understand the statement as a request for an attorney. *See Davis*, 114 S. Ct. at 2355. Chavez's eventual waiver and agreement to talk, after confronting likely practical hurdles in reaching a private lawyer, is of no moment since Officer Jones, not Chavez, initiated further discussion after the invocation. *See Smith*, 105 S. Ct. at 494.

The Court also comments on Officer Jones's characterization of Chavez's right to counsel. The Court is not privy to what was actually communicated to Chavez prior to the interrogation, but the parties stipulate that Chavez properly received his *Miranda* rights. Notwithstanding that stipulation, subsequent to Chavez's invocation but prior to Chavez's ineffectual waiver and inculpatory statements, Officer Jones stated the following:

> I can give you the chance to attempt to contact a lawyer. If any are answering at midnight, I don't know.
>
> If you feel like you need an attorney, I want to afford you the opportunity to attempt to contact one. I just also want to be reasonable and for you to understand that it is four minutes until midnight and typically unless you have one on retainer or you have a personal phone number or something for them, their office doesn't always go through to them. Now that's not saying we can't try if you are wanting to talk to an attorney.

DE 28 at 2:06-2:13; 2:49-3:14. This fundamentally mischaracterizes or at least starkly understates the right to counsel afforded by the Fifth Amendment. *Miranda* explains that the Fifth Amendment affords the accused, among other fundamental rights, the right to have counsel present during questioning. *See Miranda*, 86 S. Ct. at 1625-27. The right to attempt to contact an attorney

11

(privately, from an internet search) is at best a partial facet of Chavez's true right to counsel. Even if Chavez could not find a lawyer that night, or could not retain one at all, he still would have the right to appointed counsel to assist and advise him. *See Miranda*, 86 S. Ct. at 1627 ("In order fully to apprise a person interrogated of the extent of his rights under this system then, it is necessary to warn him not only that he has the right to consult with an attorney, but also that if he is indigent a lawyer will be appointed to represent him."); *Duckworth v. Eagan*, 109 S. Ct. 2875, 2881 (1989) (discussing *Miranda*'s requirement to inform of the right to appointed counsel if the suspect cannot afford an attorney). Officer Jones presents the situation as limited to Chavez's right to connect with and retain a private attorney at midnight, but the protection Chavez had is more muscular than that. Jones repeatedly stated that talking was Chavez's choice, but the right depiction is, though not a decisional basis here, a troubling feature of the interview.

Accordingly, for the reasons set forth above, the Court finds that Chavez invoked his right to counsel under *Edwards* and *Davis*. Chavez's subsequent waiver resulted from further police-initiated discussion. Therefore, the Government may not use Chavez's inculpatory statements from the interrogation in its case-in-chief. *See Smith*, 105 S. Ct. at 494.

    **b. Independent Source Rule**

The Government alternatively argues that, in the event the Court finds Chavez invoked his right to counsel, the fruits of the subsequent phone search should not be suppressed under the independent source rule. *See* DE 29 at 8. Specifically, the Government asserts that even absent the confirmatory information provided by Chavez in his interview, the affidavit to search the phone was supported by untainted probable cause. *See id.* at 9. Chavez curiously does not address this issue in his reply.

The Court agrees with the Government. Excluding the interrogation content, the application for the search warrant still contains probable cause and, therefore, rests on an independent source. Probable cause exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (quoting *United States v. Grubbs*, 126 S. Ct. 1494 (2006)). Less the tainted information, the affidavit provided by the Government contains extensive investigatory information sufficient for a probable cause finding.

The affidavit describes the initial report filed by the minor's family member, detailing specifics about the illegal relationship, such as when the relationship started, when it ended, how and through what media Chavez and the minor communicated, and the illegal sexual acts involving the minor. *See* DE 29-1 at 2. The affidavit further discusses screen captures of Instagram messages between the minor and Chavez, the illegal nature of the contents of those messages, and statements from the minor about Chavez's request for nude pictures on KIK. *See id.* The affidavit details a controlled call with Chavez during which Chavez admitted to being in a relationship with and having sex with the minor as well corroborating richly detailed information previously given by the minor regarding the onset of the relationship. *See id.* The affidavit possesses the requisite information regarding the investigation, the crime, and the nexus to the phone for which the warrant was sought to establish probable cause to search. The final sentence, relaying content from the interview, was confirmatory but not material to issuance; stripping it out does not impact the extant PC.

Accordingly, the Court will not suppress the Government's use of the phone content found under the state search warrant.

## IV.     Conclusion

For the reasons outlined above, the Court **GRANTS in part** and **DENIES in part** Chavez's motion to suppress, DE 26.  Chavez invoked his right to counsel under the Fifth Amendment, which constitutionally prohibited further officer-initiated questioning without counsel present.  Thus, all post-invocation statements made by Chavez during the interrogation are inadmissible in the prosecution's case-in-chief.  The independent source rule, however, permits the Government to freely use evidence discovered on Chavez's phone through execution of the relevant search warrant.

This the 10th day of January, 2026.

Signed By:
*Robert E. Wier*  /REW/
United States District Judge